Good morning. 3-18-0141, Compulsory Payment vs. Amendments of the Civil Act. Good morning. Counsel, you may proceed. Good morning. My name is Richard Ficker. I represent the petitioner and I go on from this matter in closing the time. Let me start with the Lee case. The Commission's reliance on Lee is misplaced. Lee does not stand for the proposition that an orphan's police injuries to be sustained while prior to the follow-up appointment are to be compensable if the employer is direct and willing to attend that follow-up appointment. If the court and Lee had meant that to be the rule, they would have said so expressly. Rather, Lee's holding is much more limited. It stands for two propositions. That such injuries are not compensable when an employer does not know or applies such treatment. And secondly, that all cases where an employee's injuries suffer while traveling to a follow-up appointment are compensable. And indeed, in the case I call here today, if this is not such a case, there is not one that exists. In the case I call here today, it is clearly undisputed evidence in the record that the respondent has extended the risks that petitioners encounter to include travel to the follow-up medical appointment by conforming to all aspects of petitioner's initial and follow-up order for a work-related injury. Now, in Lee, was the claimant seeking medical services right after the accident? It was following the accident, yes. When? What was the time frame? I think it was within a week or two of the accident. In this case, the claimant was seeking follow-up medical treatment for her elbow injury 11 days after sustaining the injury. Is that correct? Correct. Okay. And then December 1st is the day of the accident. So are we saying every time somebody goes for follow-up treatment and they have a traffic accident, they're going to be covered? No, not at all. But what I'm saying is that there are circumstances where the respondent controls all aspects of the initial and follow-up care of the injured worker, the petitioner, that such cases and such injuries are compensable. Okay. I think you're on to something there, but that's what I want to follow up on. In this instance, what did the employer do? Did the employer direct the claimant to go to this medical appointment at this date and at this time, or was there simply they were going to follow her there or lead her there? What was the issue? The question is not direction. The question is control. We have all aspects of the care being controlled by the respondent, the scheduling, the translation, the transportation, and even in this case, including on the date of the accident, directing the petitioner to follow the respondent's car to the appointment, which is in and of itself a case. Can I read you a passage of Lee, and maybe you can explain it to me? The Supreme Court said, and I'm quoting, employee was not compelled as a condition of his employment to obtain medical treatment on the date and time he chose. Both the employee supervisor and the company nurse testified that the employee was neither authorized nor obligated to keep this particular appointment at the clinic. As a result, his travel to the medical clinic was not a required duty of his employment. I would assert that the allegation is not material. It's the control of the I read you the Supreme Court decision. What they said controls. It says was neither authorized nor obligated to keep this particular appointment at the clinic. As a result, his travel to the medical clinic was not a required duty of his employment. It's on page 83 of the Lee opinion. And that's, and the opinion of Lee is limited to that, to instances where the employer doesn't know or authorize the treatment. Well, what is this control issue you're talking about? How does it apply here? Was it a condition of your claimant's employment to go to the follow-up appointment? Was that a condition of her job? Is that what you're trying to tell us? What I'm trying to tell you, sir, is that the control was a condition of the employees of the employer of this claimant's job. And they were paid for this. This was part and parcel and crucial to their job duties. And they controlled all aspects of the treatment. In fact, it's hard to imagine a circumstance where there was more control short of the employer actually conducting the exam themselves. The employer controls all aspects of the claimant's treatment. She had no choice in the matter? It's not a question of choice. In the whole case, where the court found that simply by the employer providing a ride to the train station for the employee, that's part of the company policy, as is the case of the company policy, it was found to be a compensable injury under the workers' contract. The facts in our case are even stronger. The day the employer directed the petitioner to follow in the car, as well as scheduling, translation, going into the room, arranging for the follow-up appointment. In the whole case, the petitioner there could have walked to the train station and not taken the ride simply because of the fact that he had some other choice. It does not defeat the compensability of the claimant. The facts in the whole case, I think, apply directly to our case and are even stronger in my case. Well, you're not telling us that the employee's travel to the medical clinic that day was a required duty of her employment, was it? No, I'm not. No, I'm not. I'm saying that the employer extended the risks of the petitioner's employment by virtue of its control. How would you respond to this argument by the employer? Why should we get penalized because we were trying to do a good deed? We didn't have to lead her to the clinic. We were trying to be, you know, good Samaritans, good citizens, good employers. So now we're penalized because we gratuitously offered to lead her there? She wasn't required to go there at that date and time. The employer in this case, for this filing, inserted themselves to such a degree in the control of all the follow-up care. How did they control the follow-up care? They provided her a translator. I don't think that's it. What? They scheduled the appointment. They provided or made sure that there was transportation to the appointment. They provided the translation. They accompanied the petitioner into the exam room. They arranged for the follow-up care. It's hard to imagine a situation where there could be more control when in order of follow-up care than in this case. It's not control. They're being good employers. They're trying to be helpful in assisting their employer. There's no control there. You're going to tell employers, hey, stay away. Don't ever help your employee or claimant because you're going to build a case against them. That's the rule you're going to advocate for. I mean, this case falls down to the old adage, no good deed goes unpunished. I mean, they didn't have to do anything for this woman. This policy of the employer of Flanders was to the benefit of both the employer and the employee. How was it to the benefit of the employer? By assisting the employee in recovery from a work-related injury or get that employee back to full duty status. Well, that's true for follow-up care whether they send people or not. Correct. But by virtue of the actions of the employer in exercising all this control over the follow-up medical appointment, they asserted themselves in the process to such an extent that they extended the risks of the patient's appointment and thus making the injuries compensable as a rising hour in the course of the appointment. You keep arguing a hull or a haul case. Yes. Well, did you give me the site? Do you have it here? Yes, I have the site. And is it in the brief or is it in the reply brief? One is in the reply brief. Okay, fine. That's okay. I just didn't see it in your original brief. So really, is this not a question of a continuum of accommodation versus accommodation to control? I mean, someone might say, well, based on the facts of this case, that the employer is merely accommodating an injured employee. It's more than that. So every undisputed fact in the record shows that from the beginning to the end, and the end may be passing on December 1st and directing the petitioner to follow the responding police car, which is a dangerous activity, that they control all aspects of the follow-up care. They arrange for everything. And their employees were paid to do this. Wait a minute. Hold on. They arranged. The woman couldn't speak English. So they gave her a translator. They gave her Ms. Sanchez, who was going to translate for her. Sanchez didn't drive her there, didn't tell her what route to take. She drove her own vehicle. When you say they arranged for everything, yeah, the lady couldn't speak English, so the employer was nice enough to provide her with someone who could translate for her. It was more than just translation. On the day of the accident, they directed the petitioner to follow the respondent's car to the appointment, besides setting up the appointments, besides going into the exam with himself. Who decided where to go on the date of the accident for medical care? This was a follow-up appointment. Oh, now you're talking about follow-up appointment. Okay. All right. Yes. And so the follow-up appointment during this, if I recall correctly, was scheduled after the initial visit, am I correct? Correct. That was scheduled by the respondent's employee to the medical provider by the respondent's employee by Sanchez. That's undisputed. Undisputed. So that the respondent's employee, not the injured claimant, actually just went and scheduled the appointment with the doctor scheduling. The circumstance, and I remember the testimony clearly, and it was in the record that I was there trying the case, they're at the initial appointment. Ms. Sanchez was in the room during the exam. The exam will be over. They go back to the desk. The desk wants to schedule the follow-up appointment. They tell Ms. Sanchez it's December 1st. Ms. Sanchez looks back at the petition and says it's December 1st. What was Mr. Hizor's testimony about what went on here? What did Hizor testify to? Hizor, I'm sorry. What did he testify to? She testified. Or she? Yes. Amy Hizor testified that when it came to the initial appointment, November 24, the translator, they asked the petitioner if she had a primary care physician of her own doctor. She said no. She said no. She was asked whether she had any place she preferred to go. She said no. And then he said a lot of people like to use St. Mary's. If she wished to go there, she could make an appointment to go there. If I remember correctly, she said she would like to go there, and that's really all I remember about the conversation. That's what he had to testify. Neither Sanchez nor Martinez would have called St. Mary's. And on cross-examination, petitioner asks Hizor, so you suggested the petitioner go to St. Mary's and she indicated that would be okay with her. Yes, I suggested that. And there was testimony in here that they don't have a company clinic, they don't direct their people to go anywhere, and the choice of where they go for medical care is up to them. Once again, sir, it's not the direction that's controlled. Well, let me ask you a question that's following up on Justice Hoffman's question with regard to control. Because Hizor testified with respect to the claimant petitioner that she reiterated, again, it's totally up to you where you want to go, and if she had any other suggestions where she wanted to go, that was up to her. I mean, that qualifying language, it means something. The testimony actually was that the petitioner looked at Hizor blindly when the suggestion was made, and then Hizor said, well, that's okay with me to go to St. Mary's. And then they went together to St. Mary's for that first appointment. As a walk-in, she, Sanchez, was in the room doing the examination, providing translation, so providing transportation and translation, and then scheduling the follow-up appointment. And then the follow-up appointment actually directed the petitioner to follow, since it was concertedly to follow in her club, I mean the respondent's club. Also, you keep asserting that, or you're alleging that the employer, quote-unquote, inserted themselves into this process, and that's control. Okay? They drove there, they went into the medical facility, they talked to whoever the staff was, talked about the follow-up appointments, okay? Did you not acknowledge that your client, the claimant, needed the services of a translator? So are you saying that we should declare providing translation services to assist and help the employee is control of the employee? I think you have to take a broader perspective to it. The Lee court said there were cases that were the injuries sustained in a follow-up medical appointment would be compensable. What the Lee court said was the one circumstance that they did address where it would be compensable is a situation where an injured employee goes immediately after the injury to seek for medical attention and then turned around and said all other cases are decided on a case-by-case basis. That's what the Lee court said. Yes. And so what I'm saying is that in the class of the instant case, if there are not circumstances where the employer, by virtue of its policy and its control, You use this word control. How do you control her? You keep inserting this word control. It seems to be the linchpin of your argument. What control do they have over her? Two things. One, the control leads to the extending the risk of an appointment. Wait a minute. Wait a minute. I want you to tell me what control they had over her. As an employee, as the employer, there was certainly an unequal relationship. Here, you've got the employer. What did they control? Side-stepping it. Where did they control? Did they insist she go to St. Mary's? Yes or no? You've got to ask the question, sir. I asked you a question. I want an answer. Did they insist that she go to St. Mary's? Yes or no? The testimony was that they suggested she go to St. Mary's. They suggested it. They did not insist on it. Was that a company clinic, St. Mary's? That's a no. I want to check if there was evidence in the record as to whether there was a contract between St. Mary's. There was testimony by his order that the company does not have a company clinic. And they don't refer people to any particular medical provider. It's up to the employee where they want to go. And in this particular case, they said a lot of the employees go to St. Mary's. We asked her if she had a physician she wanted to go to. She said no. We told her a lot of people like to go to St. Mary's. They suggested that's a pretty good place. And she acquiesced. They had to call St. Mary's because she couldn't speak English. So they did. And they arranged for the appointment. What control did they have over her? They scheduled it. They provided transportation. They didn't provide transportation. She drove herself. They asked if they directed her to follow and respond before this call. Well, counsel, aren't these things explainable by the fact you've acknowledged your client needed the services of a translator? What could have been done to send her to the facility if she couldn't communicate with the staff? So by going there to help her, that's your control? Again, sir, there's a broader perspective to this. There's more than one factor involved. There's the initial scheduling. There's a language issue. That would be explainable by? That's why they scheduled. They went there to assist her with the communication. You're saying that she was communicating with the staff. She communicated the date to your claimant. These were things that were necessary to assist the claimant. Were they not? Yes. Well, my argument is by virtue of the policy of the employer and their employees who were paid this was part and parcel of their job, they directed control of the whole scenario, right? Wait a minute. If the lady who went with her had been injured in an automobile accident, she'd be covered by the act because she was on the payroll and she was told to go there with your client. No question. If she were injured in an accident, that would be compensable. Yes. But in this particular case, your client was off the clock. She wasn't being paid. She was going to a medical facility, and the only thing the employer did in this case, the only thing was provide translation services, and she had to find her way to St. Anthony's Hospital, so they told her, follow the translator. She's going to take you there. You'll have time in reply. We're over time now. You'll have time in reply. No, it's fine. We have plenty of questions, though.  May it please the Court. My name is Gail Vellante, and I represent the respondent employer, Flanders Precision Air. Are we just in a particular, the injury occurred, am I correct, on the way to the follow-up appointment? Yes, Your Honor. Okay. So that's really what our focus should possibly be as opposed to the initial injury at the workplace and going to the hospital? Yes. Okay, so our focus should be on that timeframe. The focus is on the follow-up treatment, and we request that the circuit court's decision affirming the commission's denial of the claim be affirmed because those injuries that were sustained in that car accident on the way to the follow-up treatment are not compensable. Well, you heard his argument. He's saying they were because the employer controlled all aspects of this follow-up appointment. Right, and there was absolutely no direction of control in this case. That really is the mission of the Luscious Lee case. There are three prongs of the test that are set forth in the Supreme Court precedent, and none of them are met here in the circuit court in which it's properly applied. Well, you want to go through those prongs? Yes, Your Honor. The first prong is that the respondent, Flanders, did not direct or control the petition's medical treatment. The testimony is undercutted, but the petitioner chose for medical treatment in the presence. Martinez, Sanchez, Pizer, and even the petitioner testified that the petitioner had a purpose for medical treatment. Well, we're not talking, once again, I'm maybe trying to compartmentalize it too finely, we're not talking about an accident that occurred on the date of the accident at the employer's premises, are we? We're talking about an accident that occurred after that initial treatment. Right. Okay, so let's focus on that. Well, she chose the follow-up as well. Okay, that's really where, yeah, because it's the follow-up that we're talking about. Yes, Your Honor, and she chose that follow-up appointment. She didn't have to go there originally. She did not have to go there for the follow-up treatment. When she, Sanchez was there solely as a translator, and when actually Dr. Panuska, actually, who the person, the doctor she saw, set up the follow-up appointment, said, you know, you need to be seen again, he wanted to see her again, she didn't have to go to the follow-up appointment, and Nayeli Sanchez merely translated at the desk between the receptionist who was scheduling the appointment and the petitioner. The petitioner chose that date, she chose that time, she knew that it would not be paid, that she would not be paid for that treatment, and there's a significant distinction that the Supreme Court makes in Lushness Lake that How do we know that she knew all of that? Where is it in the record that her knowledge? That it was, because the respondent didn't, the employer didn't direct that treatment. She didn't, all Nayeli did was provide a translator. The petitioner didn't have to go back for anything. Excuse me. Lee is simpler than that. Lee is much simpler than that. I'll read it again. In the instant case the employee was not compelled as a condition of his employment to obtain medical treatment on the date and time he chose, both employee supervisor and the company nurse testified that the employee was neither authorized nor obligated to keep this particular appointment at the clinic. As a result, his travel to the clinic was not a required duty of his employment. That's Lee in a nutshell. Yes, Your Honor. And that's the whole case. One quote, I believe, is the whole case. And that is the situation here. In this case, the petitioner was not compelled as a condition of her employment to obtain medical treatment on the date or the time that she chose. She scheduled that appointment. She wasn't required to attend it. The employer didn't pick this clinic. This is not a company medical department. There was, you know, providing a translator is not direction and control. The petitioner didn't have one, and was finally provided as an accommodation to the petitioner. There was absolutely no benefit to the employer. There's no direction or control because the respondent didn't select or control this type of treatment. Employer Sanchez went there to assist the claimant, correct, and provide translation services so she could get the follow-up treatment that she needed. She was clear on what to do, the date that he's referring to. She communicated the date back. She wasn't there to tell the claimant what to do. She was there to assist by translating. Is that what you're saying? That's correct. That's what he's calling control. Right. She was not there. The petitioner asked to have the translator. She couldn't speak English. She didn't. The employer would say, we're sending a translator. The petitioner said, I don't speak English, and Presence doesn't have anyone. So they provided the translator, which they have done not just for her, but for other employees as an accommodation to the employee. The employer didn't say, hey, you need us. We're going with you. That isn't how this thing came about, right? No, and at the follow-up visit, it's not, you know, the purpose wasn't, the employer wasn't trying to get a release, and I know the petitioner's attorney suggested that, and that wasn't the case. This is not a case where they're, like, controlling medical treatment. She was merely a translator. She is a human resources assistant who provided translation only, and merely when the receptionist said the doctor wants you back, these are the available dates. She gave her dates and times, knowing that she was not going to be paid, that this was off the clock for the follow-up appointment. There's absolutely no requirement that the petitioner was required to obtain follow-up treatment. She chose that date and time for the December 1 follow-up, and that says one thing about it. Also, there's no statutory or employment duty to attend that follow-up appointment. There's no statutory requirement under the Act that an employer receive any kind of medical treatment, and there was no employment duty. The respondent had absolutely nothing to do with it. Ma'am, we understand the facts of the case. She was not obligated to go there. They didn't make the appointment for her. Well, they called for the appointment because she couldn't speak English. She was not required as a condition of her employment to go there to that specific. We understand the facts. We also understand what Lee says. And in this case, this case is not all for us with the linkage. Okay. And we would respectfully request that you affirm the circuit court. Thank you, counsel. Counsel, you may reply. If there is no benefit to this policy from the employer in overseeing all the medical care, thereby extending the risk of the employment, then why are they provided? They paid their employees to do this. It was a part and parcel of their employees' job duties. And the fact is, Your Honor pointed out that if one of their employees was also injured in the accident, there would be no doubt that would be a compensable injury. So it was certain that if there was no benefit to them, then certainly there would be no reason for them to go on. Anything that an employer does for its employees that it's not required to do, it benefits them. Gives them turkeys at Thanksgiving. Gives them a little candy for Christmas. Goes to the goodwill that the employer builds up with his employees. Are you suggesting that because they choose to develop goodwill with their employees, that anything that they do, you know, the guy drops the turkey on his toe, so that's compensable? What I'm saying, sir, is by virtue of their policy and their action, they've extended the risks of the employment. They have not extended any risk to the petitioner? Yes, they have. What risk? That she had to get medical treatment? She was going there anyway, wasn't she? She had to go there anyway. They directed her to follow in the car as a dangerous activity. Counsel, come on. Is there any evidence in the record that she got in an accident because she was following this woman? There is, and we've said it in our brief, studies that show increased risk when you ask someone to do that. Asked or suggested it? Excuse me? Did they suggest that she followed them? Yes, that was the undisputed testament. Let me ask you one point of question. I appreciate your very candid answer. Did your client on the date and time in question need the services of a translator, yes or no? I can say yes. Okay. For these reasons, I would say that the commission's reliance on me is misplaced and the decision should be reversed. Thank you. Thank you, counsel. Thank you both, counsel, for your arguments in this matter. It will be taken under advisement. A written disposition will be issued.